HERBERT L. HARRISON v. METROPOLITAN LIFE INSURANCE COMPANY.

(Filed 12 December, 1934.)

**1. Appeal and Error B d—**

Where defendant does not move for nonsuit in the lower court he waives his right to have the insufficiency of the evidence to be submitted to the jury considered on appeal. C. S., 567.

**2. Trial F a—**

Where the court submits the first two issues tendered by a party, which issues arise upon the pleadings and are determinative of the controversy, the court's refusal to submit other issues tendered will not be held for error.

**3. Trial G e: Appeal and Error J a—**

A motion to set aside the verdict as being contrary to the evidence is addressed to the sound discretion of the trial court, and his refusal of the motion is not ordinarily reviewable on appeal. C. S., 591.

**4. Trial E c—**

The charge of the trial court will be construed as a whole, and if, upon such construction, it fully charges the law applicable to the facts and does not impinge C. S., 564, it will not be held for error on appeal.

**5. Insurance I b—Where insurer relies upon fraud in insured's application, insurer must prove all elements of such fraud.**

Insurer defended this action on a policy of life insurance on the ground of fraud in that insured made misrepresentations in her application in that she stated that she had not been attended by a physician within the last five years, while in fact during such time she had gone to the office of a physician and had been told that she had goiter. There was evidence tending to show that insurer's physician examined insured prior to the issuance of the policy, and that he found no impairment of her health, and that insured died from apoplexy. Insurer did not resist recovery upon the ground of a material misrepresentation affecting the risk. The court instructed the jury that the burden was upon insurer to show that insured made the false statement with intent to deceive insurer's agent, and that insurer, by reason of such false and fraudulent misrepresentation, was induced to issue the policy to its damage: *Held*, insurer's exception and assignment of error to the charge cannot be sustained.

**6. Same—Whether misrepresentations in application for insurance are fraudulent or material are ordinarily questions for jury.**

Under the provisions of N. C. Code, 6289, all statements in an application for a policy of life insurance are deemed representations and not warranties, and a misrepresentation must be material or fraudulent in order to prevent recovery, and whether a misrepresentation is made with fraudulent intent by insured, or whether it is material, so that insurer would not have issued the policy had it known the truth, are ordinarily questions for the jury.

**7. Appeal and Error B b—**

An appeal will be determined in accordance with the theory of trial in the lower court.

APPEAL by defendant from *Stack, J.,* and a jury, at June Term, 1934, of MECKLENBURG. No error.

The complaint of plaintiff alleges, in part: "That on or about 13 February, 1931, the defendant insured the life of Viola Harrison for the sum of $1,000.00 by issuing its Policy No. 6,829,517-A to the said Viola Harrison. That the plaintiff is named beneficiary in said policy of insurance issued by the defendant upon the life of Viola Harrison, No. 6,829,517-A. That Viola Harrison died on 20 June, 1931. That the first premium of $9.35 was paid when the Policy No. 6,829,517-A

was issued upon the life of Viola Harrison, deceased, on or about 13 February, 1931. That Herbert L. Harrison, the beneficiary in said policy, made demand for payment of said policy in a reasonable time after the death of the said insured, and payment was refused. That demand has been made upon the defendant for the payment of the $1,000.00, the amount of said policy of insurance upon the life of the insured, and payment has been refused. That the defendant is justly indebted to the plaintiff in the sum of $1,000.00, with interest from 20 June, 1931, until paid."

The defendant denied liability, and for further answer and defense alleged: "That on 24 January, 1931, within two weeks prior to the date when she signed said application, she had consulted one of the leading surgeons and goiter specialists in the city of Charlotte on account of the nervousness, fast heart, tremor and loss of weight from which she had been suffering for several months, and said surgeon, after carefully examining her, had informed her that she was suffering from exophthalmic goiter, and advised her to have an operation for the removal of said goiter, and had told her that if she did not have such operation she would die from the effects of said goiter.

"That all of said facts were well known to said Viola Harrison at the time she signed Part A of said application for insurance on 7 February, 1931, and at the time she signed Part B of said application for insurance on 7 February, 1931, and at the time of the delivery of said policy to her on 16 March, 1931; and that said false and fraudulent statements and representations contained in said application, as hereinbefore set forth, were, and each of them was, made for the purpose of inducing, and did induce, the defendant to accept said application and to issue its said policy of insurance, which the defendant would not have done had it known of the disease from which said Viola Harrison was suffering, or of any of the other facts so falsely misrepresented by said Viola Harrison."

The following issues were submitted to the jury, and their answers thereto: "(1) Did the deceased, at the time of her application for insurance in the defendant company, falsely and fraudulently represent that she did not have goiter, as alleged in the answer? A. No. (2) At the time of the application by the deceased for the policy of insurance in question, did the deceased falsely and fraudulently represent that she had never been attended by a physician as alleged in the answer? A. No. (3) What amount, if any, is the plaintiff entitled to recover of the defendant? A. $1,000.00, with interest from 20 June, 1931, until paid."

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Taliaferro & Clarkson and Carswell & Ervin for plaintiff.*
*Cansler & Cansler and R. M. Gray, Jr., for defendant.*

CLARKSON, J.  Neither at the close of plaintiff's evidence nor at the close of all the evidence did the defendant make a motion for judgment as in case of nonsuit, as is allowed in C. S., 567.

In *Harris v. Buie,* 202 N. C., 634 (636), is the following: "At the close of plaintiff's evidence the defendant Buie did not move for judgment as in case of nonsuit in the court below, nor at the close of all the evidence, as he had a right to do under C. S., 567.  By the failure of defendant to follow strictly C. S., 567, *supra,* the question of the insufficiency of evidence is waived.  *Nowell v. Basnight,* 185 N. C., 142; *Penland v. Hospital,* 199 N. C., 314; *Batson v. Laundry Co., ante,* 560."

In *S. v. Waggoner, ante,* 306 (307), we find: "The defendant made a motion of nonsuit at the close of State's evidence.  This motion was overruled and the defendant offered evidence in his own behalf tending to establish his innocence.  The motion for nonsuit was not renewed at the conclusion of all the evidence, and therefore the insufficiency of evidence to warrant conviction was waived, and cannot now be considered by this Court on appeal.  *S. v. Hayes,* 187 N. C., 490."

In the present case the insufficiency of evidence is waived.  The exception and assignment of error made by defendant as to the refusal of the court below to submit the third issue and fourth issue tendered by it cannot be sustained.  The first two issues tendered by defendant are those submitted to the jury by the court below, and arose on the pleadings, and are determinative of the controversy.  The other two we do not think were material, and in not submitting them would be prejudicial to the defendant from the pleadings in the cause.  There were no exceptions to the evidence on the trial in the court below.  The defendant made a motion in the court below to set aside the verdict as contrary to all the evidence.  The court below refused the motion.  This exception and assignment of error cannot be sustained.

N. C. Code 1931 (Michie), sec. 591, is as follows: "The judge who tries the cause may, in his discretion, entertain a motion to be made on his minutes to set aside a verdict and grant a new trial upon exceptions, or for insufficient evidence, or for excessive damages; but such motion can only be heard at the same term at which the trial is had.  When the motion is heard and decided upon the minutes of the judge, and an appeal is taken from the decision, a case or exceptions must be settled in the usual form, upon which the argument of the appeal must be had."

This power is not only made discretionary by statute, but it is inherent in the trial court and ordinarily not reviewable by this Court.

*Brantley v. Collie,* 205 N. C., 229 (231). See *Bundy v. Sutton, ante,* 422. In fact, the defendant by not making motions of nonsuit, the insufficiency of evidence was waived. The other exceptions and assignments of error were to the charge of the court below. Taking the charge as a whole, we think the learned and able judge in the court below applied the law applicable to the facts. The charge fully defined all the elements of fraud and deceit and applied the law to the facts on this aspect clearly and accurately. It did not impinge C. S., 564.

N. C. Code 1931 (Michie), sec. 6289, is as follows: "All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy."

The contention of defendant is that a short while before the policy was taken out Viola Harrison went to the office of a physician and was told that she had goiter. "Have you been attended by a physician during the last five years?" The applicant answered, "No." It will be noted that the question is susceptible of different interpretations. This whole matter, under the facts in this case, was left by the court below for the jury to say whether it was done fraudulently. The company's physician examined her and did not discover a goiter, and there was evidence that she died of apoplexy. On this aspect, the court charged, "The defendant must show, if it was false, she made the false statement for the purpose and with the intent to deceive the agent of the defendant Insurance Company, and must show that it actually, by reason of such false statement, fraudulently and knowingly made, was induced to issue the policy and was damaged thereby." *Oil and Grease Co. v. Averett,* 192 N. C., 465 (467-8). We do not think the charge prejudicial. *Anthony v. Teachers Protective Union,* 206 N. C., 7. We think this exception and assignment of error made by defendant cannot be sustained.

In *Howell v. Insurance Co.,* 189 N. C., 212 (217), is the following: "But whether a representation is material or not is not always a question of fact, or rather, like the question of negligence, or reasonable time, a mixed question of law and fact. Where there is a controversy as to the facts, or where, upon the facts admitted or found by the jury, the court cannot hold that knowledge or ignorance of them, upon all the facts in the particular case, would or would not naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of premiums, an appropriate issue should be submitted to the jury, in order that they may, upon competent evidence, determine whether or not the representation was material."

The application was made on 5 February, 1931, and the policy issued about 13 February, 1931. The defendant Insurance Company had its physician to examine her. He testified, in part: "I found no abnormality physically from that examination, which was held on 7 February, 1933, and after Viola Harrison signed it, I signed my name on Part B of the application as a witness. . . . . I could not tell from her physical appearance anything that might indicate any disease. She appeared in good health when I examined her, and I recommended her as a good risk. I based this recommendation on the answers and history and my findings. . . . I made the examination at the insured's home at the request of the company. . . . I generally start and read the question. I can't swear that I asked Viola Harrison every one, but I read the list of diseases and don't ask the questions from memory. . . . I examined her pulse and it was in the normal limits. I examined her heart. If her pulse rate had not been within the normal limits, they would have sent her back for reëxamination. . . . I can't swear I read the questions verbatim every time because sometimes I know the applicant. An exophthalmic goiter bulges. Viola Harrison had no abnormal enlargement, and I did not notice anything indicating a goiter, and I found no symptoms of goiter."

W. M. Moore, agent for defendant, testified, in part: "Does the appearance of applicant indicate to you that she is in sound health? Yes. Do you recommend delivery of the policy? Yes. . . . She paid me the premium after Form 074 was signed, and I delivered the policy to her. I know that the insured was examined by a doctor before the issuance of this policy. . . . I solicited her several times before she took out this policy. . . . She was not sick but some two or three days before she died. She was 24 or 25 years old. . . . I saw Viola Harrison all along during the six months I was on that route and she appeared to be in good health. She was in normal health all the time I saw her, both before and after the policy was issued. I did not see her but about once a month. There was nothing to indicate she was sick."

Her husband, the plaintiff, testified, in part: "Viola Harrison was my wife. I work at Efird's Department Store. I talked to Dr. Kennedy when he treated my wife and he said that she died with apoplexy."

In *Hines v. Casualty Co.*, 172 N. C., 225 (227), is the following: "The question is not whether the plaintiff had hernia, for this is not denied, but whether it was of such nature as to have rendered him an unsound man at the time of the application. The jury is the only tribunal which can settle the disputed facts, for this is an issue of fact and not a matter of law. The illness from which the plaintiff suffered subsequently, and for which he seeks to recover, was an attack of rheu-

matism, which had no connection with, nor was there any evidence to show that it was in any way traceable to hernia.

"Revisal, 4808 (C. S., 6289), provides that all statements in an application for insurance shall be held merely representations, and not warranties; and that no representations, unless fraudulent or materially affecting a risk, shall prevent a recovery. This matter was properly submitted to the jury, and they found that 'the plaintiff was of sound physical condition at the time he signed the application, notwithstanding such hernia; and that his representations at the time he applied for the policy were not false and were not material to the defendant in determining whether it would issue the policy.' The court instructed the jury that whether he was in sound health or not was a matter for the jury to determine upon the evidence, depending upon whether the extent of the hernia he had was such as to render him unsound or not." ·

In *Suggs v. N. Y. Life Insurance* (S. C.), Vol. 176, No. 3, p. 457, S. E. Reporter, in a case similar to the present, it is said: "In *Johnson v. New York Life Insurance Company,* 165 S. C., 494, 164 S. E., 175, 177, the Court said: 'Finally, the intent with which representations or misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive. *Huestess v. Insurance Co.,* 88 S. C., 31, 70 S. E., 403.' "

Ordinarily, the question whether the representation is material or fraudulent is for the jury to determine, but in some cases, where the facts are undisputed and these facts can reasonably give rise to only one inference, that the policy was procured by a material representation which was false, or by fraud and deceit, the question is one for the court to determine. The case in the court below and the issues submitted were on the theory of fraud.

In *Weil v. Herring, ante,* 6 (10), *Brogden, J.,* says: "An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court."

Then, again, there was no request for nonsuit, as heretofore stated, and the question of the insufficiency of the evidence to be passed on by the jury was waived. We see no prejudicial or reversible error in the trial of the case.

No error.